## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CHRISTINA J. PETERSON | ] | |
| | ] | |
| **Plaintiff,** | ] | CIVIL ACTION FILE NO.: |
| | ] | |
| v. | ] | |
| | ] | _____ |
| CITY OF ATLANTA; | ] | |
| KEITH WADSWORTH, | ] | |
| in his individual capacity; | ] | JURY TRIAL DEMANDED |
| | ] | |
| **Defendants.** | ] | |

---

## COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS AND CONSTITUTIONAL RIGHTS
## (42 U.S.C. § 1983) AND STATE LAW CLAIMS

---

Plaintiff Christina J. Peterson ("Plaintiff"), an attorney licensed to practice law in the State of Georgia and proceeding pro se, files this Complaint against Defendants the City of Atlanta ("City") and Keith Wadsworth ("Wadsworth"), and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil rights action arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983, for violations of Plaintiff's rights

under the Fourth and Fourteenth Amendments, together with supplemental state-law claims under Georgia law.

2. This action arises from Plaintiff's unlawful seizure, excessive force, prolonged detention, malicious prosecution, and public stigmatization, and from the City's affirmative ratification, approval, and continued dissemination of false and misleading arrest narratives and police video footage portraying Plaintiff as a violent felon.

3. Plaintiff seeks compensatory damages, punitive damages, declaratory and injunctive relief, attorneys' fees, and costs, as set forth below.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367. Plaintiff asserts no state-law claims against Defendant City of Atlanta; all state-law tort claims are asserted solely against Defendant Wadsworth in his individual capacity.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Atlanta, Georgia.

7. This Court has personal jurisdiction over all Defendants.

## III. PARTIES

8. Plaintiff Christina J. Peterson is a resident of Douglas County, Georgia.

9. At all relevant times, Plaintiff held a position of public trust and professional responsibility as an elected Probate Judge in the State of Georgia, and Defendants knew or should have known that falsely portraying her as having committed violent felony conduct, especially against law enforcement, would cause severe and foreseeable reputational and professional harm.

10. Defendant Keith Wadsworth is, and was at all relevant times, a police officer employed by the Atlanta Police Department with badge number 6955, acting under color of state law, and is sued in his individual capacity.

11. Defendant City of Atlanta is a municipal corporation organized under the laws of the State of Georgia and is responsible for the policies, customs,

practices, supervision, training, discipline, approval, and ratification of

conduct by Atlanta Police Department officers.


## IV. STATEMENT OF FACTS

12. On or about June 21, 2024, at approximately 3:00 a.m., Plaintiff was present
    outside the Red Martini nightclub in Atlanta, Georgia, where she observed
    a man violently assaulting a woman by throwing her backward and
    repeatedly punching her in the face, while Plaintiff remained separate
    from the assailant and did not engage in the altercation.

13. Plaintiff attempted to assist the victim and did not use or threaten violence
    against anyone.

14. While the assault was still ongoing and the victim was walking backward
    while the assailant continued to pursue her and strike at her, Plaintiff
    momentarily grasped the back of the assailant's shirt solely to interrupt the
    ongoing violence, did not strike, push, restrain, or threaten the assailant,
    and immediately disengaged.

15. Immediately after disengaging, Plaintiff observed a different male
    individual unlawfully seize and hold the victim. Plaintiff verbally directed
    the individual to release the victim and briefly attempted to free the

victim's arm from his grasp using minimal, non-violent contact. Plaintiff did not strike, threaten, or use force against the individual. It was at this point—without warning, inquiry, or command—that Defendant Wadsworth seized Plaintiff.

16. At the time of the seizure, Defendant Wadsworth had no personal knowledge of the altercation, had not observed criminal conduct by Plaintiff, and conducted no investigation before using force.

17. Defendant Wadsworth did not interview the victim, speak with witnesses, or otherwise attempt to determine Plaintiff's role before acting.

18. Plaintiff did not resist, threaten, or obstruct Defendant Wadsworth.

19. Without provocation or justification, Defendant Wadsworth violently slammed Plaintiff head-first to the ground and applied compressive force to her neck and back while she was prone, non-resisting, and compliant, before placing her in handcuffs.

20. Plaintiff did not strike, attempt to strike, or batter Defendant Wadsworth at any time.

21. Plaintiff's identification was in her purse, which was on her shoulder immediately before she was seized. When Plaintiff was knocked to the

ground by Defendant Wadsworth, her purse fell nearby and was retrieved by friends.

22. After Plaintiff had already been seized and handcuffed, Defendant Wadsworth asked Plaintiff for her name. Plaintiff's identification was in her purse, which had been knocked to the ground during the seizure, and friends on scene immediately provided Plaintiff's identity to Defendant Wadsworth. Defendant Wadsworth nevertheless refused to permit Plaintiff to retrieve her identification, ignored the information provided by witnesses, and continued to detain Plaintiff.

23. Defendant Wadsworth initially claimed Plaintiff was being arrested for disorderly conduct.

24. Plaintiff was placed in the back of Defendant Wadsworth's patrol vehicle and detained for four to five hours, during which Wadsworth drove erratically, stopped at undisclosed locations, exited the vehicle multiple times, and made private phone calls.

25. Plaintiff's detention was punitive and pretextual, not investigatory, and occurred without probable cause or prompt judicial determination.

26. Approximately eight hours after the initial seizure, Plaintiff was informed for the first time that Defendant Wadsworth had obtained warrants

accusing her of felony obstruction of a law-enforcement officer, elevated to a felony based solely on the false allegation that Plaintiff battered Defendant Wadsworth while he was purportedly investigating a crime, as well as a separate misdemeanor charge of battery on a law-enforcement officer.

27. In arrest citations and charging narratives, Defendant Wadsworth falsely alleged that Plaintiff struck him with a closed fist and/or shoved him and struck him in the head and/or chest.

28. These allegations were knowingly false and were made to justify Defendant Wadsworth's unlawful use of force and prolonged detention.

29. Both charges, which accused Plaintiff of battering a police officer, were later dismissed by the prosecuting authority.

30. Plaintiff was subsequently accused of a misdemeanor obstruction offense that did not allege battery or physical contact.

31. Prior to booking and before Plaintiff was informed of felony and battery charges, non-law-enforcement third parties publicly posted allegations stating that Plaintiff struck Defendant Wadsworth, mirroring the false arrest narrative.

32. These non-public allegations could only have originated from law-enforcement dissemination of Defendant Wadsworth's false account.

33. Decisions regarding the selection, editing, approval, release, and continued publication of police body-worn camera footage and arrest narratives are not made by line officers, but are undertaken pursuant to established City procedures and require affirmative review and authorization by command-level APD officials, public affairs personnel, and/or City legal staff acting under delegated municipal authority.

34. On June 21, 2024, the City approved, released, and affirmatively promoted edited and curated body-worn and dash-camera footage that implied Plaintiff committed felony obstruction and battery on a police officer. Such approval and release decisions were made by City officials exercising delegated final authority over law-enforcement communications and media relations, and were not discretionary acts of individual officers.

35. The City released and promoted these materials before any judicial determination, while felony charges were pending.

36. After the felony charges were dismissed, the City continued publication of the misleading footage and narratives without correction, disclaimer, or contextual clarification.

37. The City had actual or constructive notice that the felony obstruction and battery allegations were disputed, unsupported, and dismissed, yet made a conscious decision to continue dissemination.

38. The City further permitted or failed to prevent the premature dissemination of non-public arrest allegations, including the specific claim that Plaintiff struck Defendant Wadsworth on the head and/or chest, before booking or lawful public release.

39. These acts were not isolated incidents, but reflected a known and recurring municipal practice of approving and disseminating arrest narratives favorable to officers involved in use-of-force incidents, even where facts are disputed or charges are later dismissed.

40. Prior to Plaintiff's arrest, Defendant City of Atlanta was on notice of allegations that Defendant Wadsworth had engaged in unconstitutional arrests and uses of force in prior incidents and litigation. Despite such notice, the City failed to take reasonable corrective or preventative action, and continued to deploy Defendant Wadsworth without adequate supervision, discipline, or retraining.

41. At all relevant times, the City's failure to meaningfully discipline, retrain, or remove Defendant Wadsworth despite repeated notice of similar

constitutional violations predictably resulted in the same types of unlawful

seizures, uses of force, and false charging decisions alleged here.

42. By authorizing, approving, and continuing dissemination of misleading

arrest materials, the City affirmatively adopted and ratified Defendant

Wadsworth's false account as official municipal policy.

43. As a direct and proximate result of Defendants' actions and omissions,

Plaintiff suffered physical injury, emotional distress, humiliation, loss of

liberty, reputational harm, professional damage, and ongoing economic

and non-economic losses. Because the City's false felony allegations were

disseminated through global internet platforms and remain publicly

accessible worldwide, Plaintiff's reputational injury is not geographically

limited and has materially impaired her ability to obtain legal

employment, clients, and professional opportunities both domestically and

internationally.

## V. CLAIMS FOR RELIEF

COUNT I
42 U.S.C. § 1983 – FALSE ARREST
*(Fourth Amendment – Against Defendant Wadsworth)*

44. Plaintiff realleges and incorporates by reference all preceding paragraphs.

45. Defendant Wadsworth seized and arrested Plaintiff without probable cause or arguable probable cause to believe she had committed any criminal offense.

46. At the time of Plaintiff's arrest, Defendant Wadsworth had not observed Plaintiff commit any crime, had not conducted any investigation, and possessed no reasonably trustworthy information that would lead a prudent officer to believe Plaintiff had engaged in unlawful conduct.

47. Plaintiff did not resist, obstruct, threaten, or interfere with Defendant Wadsworth in any manner.

48. Defendant Wadsworth's arrest of Plaintiff was objectively unreasonable under the totality of the circumstances.

49. The Fourth Amendment right to be free from arrest absent probable cause was clearly established at the time of Plaintiff's arrest, and no reasonable officer in Defendant Wadsworth's position could have believed that probable cause or arguable probable cause existed under the facts confronting him.

50. Defendant Wadsworth is therefore not entitled to qualified immunity for Plaintiff's false arrest.

51. As a direct and proximate result of Defendant Wadsworth's conduct, Plaintiff suffered deprivation of liberty, emotional distress, humiliation, reputational harm, and other compensable damages.

COUNT II
42 U.S.C. § 1983 – EXCESSIVE FORCE
*(Fourth Amendment – Against Defendant Wadsworth)*

52. Plaintiff realleges and incorporates by reference all preceding paragraphs.

53. Defendant Wadsworth used force against Plaintiff that was objectively unreasonable and excessive under the circumstances.

54. Plaintiff posed no immediate threat, was not resisting, and was not attempting to flee.

55. Without justification, Defendant Wadsworth violently slammed Plaintiff to the ground and applied force to her neck and back.

56. The level of force used was grossly disproportionate to any legitimate law-enforcement objective.

57. At the time of the incident, it was clearly established that a law-enforcement officer may not use significant force against a non-resisting, non-threatening individual, and no reasonable officer could have believed Defendant Wadsworth's conduct was lawful.

58. Defendant Wadsworth is therefore not entitled to qualified immunity for his use of excessive force.

59. Plaintiff suffered physical pain, injury, emotional distress, humiliation, and other damages as a direct result of Defendant Wadsworth's actions.

COUNT III
42 U.S.C. § 1983 – UNLAWFUL DETENTION / FALSE IMPRISONMENT
*(Fourth Amendment – Against Defendant Wadsworth)*

60. Plaintiff realleges and incorporates by reference all preceding paragraphs.

61. Defendant Wadsworth detained Plaintiff for several hours without probable cause, a warrant, or prompt judicial determination.

62. The detention was punitive and pretextual, not investigatory, and served no legitimate law-enforcement purpose.

63. During Plaintiff's prolonged detention, Defendant Wadsworth failed to pursue any meaningful investigation, seek supervisory approval, or obtain judicial review.

64. The Fourth Amendment right to be free from prolonged detention absent probable cause or prompt judicial process was clearly established at the time of Plaintiff's detention.

65. No reasonable officer could have believed that detaining Plaintiff for hours under these circumstances was lawful.

66. Defendant Wadsworth is therefore not entitled to qualified immunity for Plaintiff's unlawful detention.

67. Plaintiff suffered loss of liberty, fear, emotional distress, and other damages as a result.

COUNT IV
42 U.S.C. § 1983 – MALICIOUS PROSECUTION
*(Fourth Amendment – Against Defendant Wadsworth)*

68. Plaintiff realleges and incorporates by reference all preceding paragraphs.

69. Defendant Wadsworth initiated and continued criminal proceedings against Plaintiff by knowingly providing false statements and materially misleading information.

70. Defendant Wadsworth falsely alleged that Plaintiff struck him with a closed fist and struck him in the head and/or chest.

71. Defendant Wadsworth knowingly fabricated and forwarded false evidence and statements for use in criminal proceedings, depriving Plaintiff of liberty without due process of law.

72. Defendant Wadsworth acted without probable cause and with malice, for the purpose of justifying his unlawful use of force and prolonged detention.

73. Plaintiff was subjected to a significant deprivation of liberty as a result of the criminal prosecution, including arrest, detention, and felony charging.

74. The felony charges terminated in Plaintiff's favor, indicative of innocence.

75. It was clearly established that an officer violates the Fourth Amendment by fabricating evidence or knowingly making false statements to initiate criminal charges, and no reasonable officer could have believed such conduct was lawful.

76. Defendant Wadsworth is therefore not entitled to qualified immunity for his malicious prosecution of Plaintiff.

COUNT V
STATE LAW – FALSE ARREST AND FALSE IMPRISONMENT
*(Against Defendant Wadsworth)*

77. Plaintiff realleges and incorporates by reference all preceding paragraphs.

78. Defendant Wadsworth knowingly and intentionally arrested and detained Plaintiff without lawful authority.

79. Defendant Wadsworth acted with actual malice, intent to do wrong, and conscious indifference, defeating official immunity under Georgia law.

80. Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

COUNT VI
STATE LAW – BATTERY
*(Against Defendant Wadsworth)*

81. Plaintiff realleges and incorporates by reference all preceding paragraphs.

82. Defendant Wadsworth intentionally and without justification made harmful and offensive physical contact with Plaintiff.

83. Defendant Wadsworth acted with actual malice and intent to injure, defeating official immunity.

84. Plaintiff suffered physical injury, pain, and emotional distress.

COUNT VII
STATE LAW – ASSAULT
*(Against Defendant Wadsworth)*

85. Plaintiff realleges and incorporates by reference all preceding paragraphs.

86. Defendant Wadsworth intentionally placed Plaintiff in reasonable apprehension of immediate bodily harm.

87. Defendant Wadsworth acted with actual malice and intent to injure, defeating official immunity.

88. Plaintiff suffered emotional distress and fear for her safety.

COUNT VIII
42 U.S.C. § 1983 – STIGMA-PLUS DUE PROCESS
*(Fourteenth Amendment – Against Defendant City of Atlanta)*

89. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

90. Defendant City of Atlanta publicly disseminated false and misleading arrest narratives and police video footage portraying Plaintiff as having committed violent felony offenses, including felony obstruction and battery on a law-enforcement officer.

91. The stigmatizing statements and visual depictions disseminated by the City were false and were published with knowledge of their falsity or with reckless disregard for the truth.

92. The City's dissemination occurred through official channels and with command-level approval, including the release and promotion of edited body-worn and dash-camera footage and arrest narratives presented as official and authoritative accounts of Plaintiff's conduct.

93. The City's official dissemination and continued publication of false felony arrest narratives and curated police video footage occurred in connection with Plaintiff's arrest, prolonged detention, and felony prosecution, and independently imposed an ongoing legal and practical burden by publicly branding Plaintiff as a violent felon without adjudication, without affording her any name-clearing hearing or meaningful opportunity to contest the City's official account, thereby altering her legal status, professional standing, and liberty interests in a manner distinct from and in addition to the underlying criminal process.

94. The stigmatization occurred contemporaneously with, and was causally connected to, Plaintiff's seizure, detention, felony charging, and restriction of liberty, and directly altered Plaintiff's legal status and professional standing as an elected judicial officer.

95. The City continued to disseminate and maintain the false and misleading arrest narratives and video materials after the felony charges were dismissed, despite actual or constructive knowledge that the allegations were unsupported and no longer pending.

96. By disseminating and continuing to publish false felony allegations without providing Plaintiff any procedural mechanism to clear her name,

the City deprived Plaintiff of protected liberty and property interests

without due process of law, in violation of the Fourteenth Amendment.

COUNT IX
MUNICIPAL LIABILITY (MONELL)
*(Against Defendant City of Atlanta)*

97. Plaintiff realleges and incorporates by reference all preceding paragraphs
as if fully set forth herein.

98. Defendant City of Atlanta is a "person" within the meaning of 42 U.S.C. §
1983 and is subject to suit for constitutional violations caused by its
policies, customs, practices, and deliberate indifference.

99. At all relevant times, Defendant City of Atlanta, through the Atlanta Police
Department ("APD"), was responsible for the supervision, discipline,
training, monitoring, and deployment of sworn officers, including
Defendant Keith Wadsworth.

100.    Prior to the incident giving rise to this action, the City had actual
notice that Defendant Wadsworth repeatedly violated APD rules
governing conformance to directives, appropriate action during citizen
encounters, and documentation and reporting requirements related to
police activity, as reflected in multiple sustained disciplinary findings over
several years.

19

101.    These sustained violations were not isolated or aberrational. Rather, they reflected a recurring pattern in which Defendant Wadsworth failed to comply with directives designed to regulate officer conduct, ensure accountability during citizen encounters, and safeguard constitutional rights.

102.    Despite this documented pattern, the City failed to implement effective corrective measures, including meaningful supervision, targeted retraining, monitoring, reassignment, or restrictions on Defendant Wadsworth's enforcement authority.

103.    Instead, the City responded with escalating but ineffective discipline, including oral admonishments, written reprimands, and short suspensions, which the City knew or should have known were insufficient to prevent continued violations of the same or similar directives.

104.    By continuing to deploy Defendant Wadsworth in enforcement roles involving citizen contact without effective remedial action, the City demonstrated deliberate indifference to the known and obvious risk that he would engage in conduct resulting in constitutional violations.

105.    Although the City maintained written policies governing officer conduct and reporting obligations, it failed to provide effective remedial training to Defendant Wadsworth after repeated sustained violations of

those directives, making it plainly foreseeable that unconstitutional

conduct would recur.

106.     Through repeated sustained findings that Defendant Wadsworth

failed to comply with directives governing officer conduct and

accountability—and through the City's failure to correct those

deficiencies—the City maintained a custom or practice of tolerating

violations that undermine constitutional safeguards during police

encounters.

107.     This custom or practice communicated to Defendant Wadsworth,

and to similarly situated officers, that violations of directives governing

officer conduct and accountability would not result in meaningful

corrective action, thereby encouraging continued disregard for

constitutional requirements.

108.     The City's failure to supervise, discipline, and train Defendant

Wadsworth was the moving force behind the constitutional violations

suffered by Plaintiff.

109.     Had the City implemented effective remedial supervision or training

in response to Defendant Wadsworth's repeated sustained violations, the

unlawful seizure, excessive force, prolonged detention, malicious

prosecution, and resulting constitutional harms alleged in this action would not have occurred.

110.    Accordingly, Defendant City of Atlanta is liable under 42 U.S.C. § 1983 for the constitutional injuries suffered by Plaintiff as a direct and proximate result of its policies, customs, practices, and deliberate indifference.

## VI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in her favor on all counts;

B. Award compensatory damages in an amount to be determined by the jury, believed to exceed FIFTY MILLION DOLLARS ($50,000,000.00), for physical injury, emotional distress, loss of liberty, and widespread reputational and professional harm;

C. Award punitive damages against Defendant Wadsworth;

D. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

E. Award pre- and post-judgment interest as allowed by law;

F. Issue declaratory relief declaring that Defendants violated Plaintiff's rights under the United States Constitution;

G. Issue appropriate prospective injunctive relief requiring the City to correct, clarify, or disclaim false or misleading public video publications and arrest narratives concerning Plaintiff, in a manner consistent with due process; and

H. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 13th day of January, 2026.

> /s/Christina J. Peterson
> Bar No. 457840
> *Attorney for Plaintiff*
> CJ Peterson Law
> 2727 Skyview Dr. #345,
> Lithia Springs, GA 30122
> cjpetersonlaw@gmail.com
> 404-953-5257